IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| ANTHONY BALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No.  CV-09-764-HU |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | OPINION & ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

Tim Wilborn
WILBORN LAW OFFICE, P.C.
P.O. Box 2768
Oregon City, Oregon 97045

     Attorney for Plaintiff

Dwight C. Holton
ACTING UNITED STATES ATTORNEY
District of Oregon
Adrian Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2092

/ / /

/ / /

/ / /

1 - OPINION & ORDER

Kathryn A. Miller
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

     Attorneys for Defendant

HUBEL, Magistrate Judge:

     Plaintiff Anthony Ball brings this action for judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB).  This Court has jurisdiction under 42 U.S.C. § 405(g).  All parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). I reverse the Commissioner's decision and remand the case for additional proceedings.

PROCEDURAL BACKGROUND

     Plaintiff filed his DIB application on May 11, 2001, alleging an onset date of June 30, 2000, and based on a combination of impairments including post-traumatic stress disorder, degenerative disc disease, and left shoulder degenerative joint disease.  Tr. 67-70, 155.  Following an initial denial which was affirmed on reconsideration, Tr. 31, 32, plaintiff appeared, with counsel, before Administrative Law Judge (ALJ) Schloss for a hearing on November 20, 2002, followed by a supplemental hearing on April 16, 2003.  Tr. 1266-1320.  On October 23, 2003, the ALJ found plaintiff not disabled.  Tr. 932-41.

     In a June 16, 2004 Order, the Appeals Council granted plaintiff's request for review, vacated ALJ Schloss's October 23, 2003 decision, and remanded the case back to the ALJ for further proceedings.  Tr. 949-50.

2 - OPINION & ORDER

1    Upon remand from the Appeals Council, ALJ Tielens held a
2  hearing on February 22, 2006. Tr. 1321-1364. Plaintiff was again
3  represented by counsel. Id. On May 10, 2006, ALJ Tielens found
4  plaintiff not disabled. Tr. 15-30. The Appeals Council denied
5  plaintiff's request for review of this decision, making ALJ
6  Tielen's May 10, 2006 decision the Commissioner's final decision.
7  Tr. 8-12. Plaintiff then filed an action in this Court seeking
8  judicial review of ALJ Tielens's May 10, 2006 decision. Ball v.
9  Astrue was given civil docket number CV-07-231-MA and assigned to
10  Judge Marsh.

11    Following the filing of plaintiff's opening memorandum in
12  support of plaintiff's request that the ALJ's decision be reversed
13  and remanded for a determination of benefits, defendant moved to
14  remand the case back to the agency for further proceedings. In
15  this motion, defendant conceded certain errors by the ALJ, but
16  argued that unresolved issues prevented a remand for benefits and
17  instead, a remand for additional proceedings was appropriate.
18  Plaintiff filed a memorandum in reply/opposing defendant's motion.

19    In a February 14, 2008 Opinion & Order, Judge Marsh granted
20  defendant's motion to remand. Tr. 1438-45. The details of his
21  Order are addressed more fully below.

22    Upon remand, ALJ Say held another hearing, on October 28,
23  2008. Tr. 1523-54. Plaintiff was represented by counsel. Id. On
24  February 13, 2009, ALJ Say found plaintiff not disabled. Tr. 1369-
25  84. The Appeals Council denied plaintiff's request for review of
26  the ALJ's February 13, 2009 decision. Tr. 1365-67.

27                STANDARD OF REVIEW & SEQUENTIAL EVALUATION
28    A claimant is disabled if unable to "engage in any substantial

3 - OPINION & ORDER

gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).    Disability claims are evaluated according to a five-step procedure.  Baxter v. Sullivan, 923 F.2d 1391, 1395 (9th Cir. 1991).    The claimant bears the burden of proving disability.    Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989).    First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments."  Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at 141; see 20 C.F.R. §§ 404.1520(d), 416.920(d).    If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, he is not disabled.  If he cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§

404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, he is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

The court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Baxter, 923 F.2d at 1394.  Substantial evidence means "more than a mere scintilla," but "less than a preponderance."  Id.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Id.

DISCUSSION

Plaintiff alleges that ALJ Say made several errors in his February 13, 2009 decision.  Defendant contends that plaintiff is precluded from raising most of these arguments as a result of Judge Marsh's 2008 decision which defendant contends is the "law of the case."  Because a recitation of the medical and other evidence is unnecessary if defendant is correct, I address defendant's preclusion argument first.

In the litigation before Judge Marsh, plaintiff contended that ALJ Tielens made nine separate errors:  (1) the ALJ failed to properly consider plaintiff's post-traumatic stress disorder (PTSD); (2) the ALJ failed to properly consider Veteran's Administration disability ratings; (3) the ALJ did not properly consider the lay witness and third party testimony; (4) the ALJ improperly rejected treating physician opinions; (5) the ALJ improperly rejected plaintiff's testimony; (6) the ALJ failed to include his residual functional capacity (RFC) finding in a

5 - OPINION & ORDER

vocational hypothetical; (7) the ALJ relied on vocational expert testimony which did not consider the ALJ's RFC finding; (8) the ALJ's RFC finding was deficient in that it improperly excluded limitations established by improperly rejected evidence; and (9) the ALJ improperly classified plaintiff's past relevant work. Ball, No. CV-07-231-MA, Pltf's Open. Brief at pp. 7-8 (dkt #11). Plaintiff also generally argued that ALJ Tielens's decision was not supported by substantial evidence and was based on the application of incorrect legal standards.  Id. at p. 8.

In defendant's memorandum in support of its motion to remand, defendant agreed with some of the arguments plaintiff made in his opening memorandum.  Ball, No. CV-07-231-MA, Deft's Mem. in Sup. of Rem. at p. 6 (dkt #17).  Defendant agreed that in his May 10, 2006 decision, ALJ Tielens had failed to address the lay witness statement of plaintiff's sister Brenda Bailey, and had made errors in regard to assessing plaintiff's prior work and in his alternative step five finding.  Id.  Defendant denied all other assertions of error.  Id.

Defendant argued that unresolved issues prevented a remand for a determination of benefits.  Id. at pp. 7, 9-11.  Defendant represented that upon remand, the ALJ would obtain supplemental vocational expert testimony to address plaintiff's ability to perform his past relevant work at step four, and if necessary, his ability to make a vocational adjustment to other work at step five that is within his assessed RFC.  Id.  In addition, the ALJ would clarify any potential inconsistencies between plaintiff's RFC and the requirements of past relevant work or other work identified at steps four and five.  Id.  Finally, the ALJ would evaluate the lay

6 - OPINION & ORDER

1  witness statement of plaintiff's sister.  Id.

2      In reply, and in opposition to the motion to remand, plaintiff
3  argued that a remand for further administrative proceedings was
4  unnecessary because the record was fully developed and supportive
5  of a finding of disability.  Ball, No. CV-07-231-MA, Pltf's
6  Reply/Opposition at p. 1 (dkt #19).  More specifically, plaintiff
7  argued that when the improperly rejected opinion of Dr. Dobscha was
8  credited as true, plaintiff's impairments met Listed Impairment
9  12.06, establishing plaintiff's disability at step three of the
10 sequential evaluation.  Id. at p. 2.  Additionally, plaintiff
11 argued that crediting Dr. Dobscha's opinion regarding plaintiff's
12 RFC limitations established plaintiff's disability at steps four
13 and five, regardless of other errors.  Id. at pp. 4-5.  Plaintiff
14 further argued that the ALJ improperly rejected the VA's disability
15 ratings and giving great weight to those ratings established that
16 plaintiff was disabled.  Id.

17     Judge Marsh specifically addressed plaintiff's argument that
18 ALJ Tielens had improperly discredited Dr. Dobscha's opinion and
19 had improperly determined that plaintiff did not meet Listed
20 Impairment 12.06 based on his PTSD.  Ball, No. CV-07-231-MA, Op. at
21 pp. 3-7.  Judge Marsh stated that "[t]he ALJ thoroughly considered
22 whether Ball's PTSD met or equaled Listed Impairment 12.06, which
23 he noted to require a combination of the A and B criteria, or the
24 A and C criteria, as set forth in that listing."  Id. at p. 4.
25 Judge Marsh explained that the "ALJ's step three findings are
26 rooted in his categorical rejection of Ball's credibility."  Id.
27 Judge Marsh also discussed the reasons ALJ Tielens rejected Dr.
28 Dobscha's opinion.  Id. at p. 6.  Following this discussion, Judge

7 - OPINION & ORDER

Marsh concluded that "[s]ince I find the ALJ's assessment of this anomalous record to be reasonable and based on substantial evidence, I decline to credit as true Dr. Dobscha's assessment of Ball's work-related functional limitations." Id. at p. 7.

Judge Marsh then remarked on defendant's concessions and the relief defendant sought in the motion to remand. Id. He then concurred with defendant that "further proceedings are necessary to obtain supplemental vocational expert testimony, and to address all lay witness testimony." Id. He concluded with the following statements:

> By no means is a finding of disability directed on the present record. As should be clear by now, I do not find any merit to Ball's arguments that the ALJ wrongly rejected his credibility, failed to properly consider the significance of his VA disability rating and receipt of benefits, or failed to provide legally sufficient reasons for rejecting Dr. Dobscha's opinion. Therefore, I affirm the ALJ's evaluation of these issues as based on substantial evidence and legally sufficient reasoning.

Id. at pp. 7-8.

In the instant case, defendant argues that the "law of the case" precludes reexamination of issues previously decided by Judge Marsh. Generally, the law of the case doctrine provides that the decision of a higher court on a legal issue must be followed in all subsequent proceedings in the same case. E.g., United States v. Park Place Assocs., Ltd., 563 F.3d 907, 925 (9th Cir. 2009). The doctrine is based on the public policy that litigation must come to an end. United States v. Smith, 389 F.3d 944, 948 (9th Cir. 2004).

The doctrine applies to district court determinations made in the context of judicial review of administrative agency decisions. E.g., Brachtel v. Apfel, 132 F.3d 417, 419-20 (8th Cir. 1997) (law of the case doctrine applies to administrative agencies on remand

8 - OPINION & ORDER

and thus, if district court found that the plaintiff needed to lie down, ALJ is bound by that finding on remand); Wilder v. Apfel, 153 F.3d 799, 803 (7th Cir. 1998) (law of the case doctrine "requires the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart.").

In a 2005 decision, the Central District of California reviewed a social security action for the third time. Ischay v. Barnhart, 383 F. Supp. 2d 1199 (C.D. Cal. 2005). The first time, the court reversed and remanded the ALJ's determination at step four and ordered the ALJ to complete the five-step disability evaluation. Id. at 1203. The second time, the parties stipulated to a remand for the purpose of obtaining additional vocational expert testimony. Id. at 1208.

Upon appeal to the district court for the third time, the plaintiff argued that the court's second remand order established the law of the case and precluded the ALJ from revisiting steps one through four of the sequential process. Id. at 1213. The defendant argued that the doctrine was inapplicable because the pending case was a different case than the one remanded. Id.

The court rejected the defendant's argument. The court thoroughly discussed the related concepts of the "law of the case" and the "rule of mandate," which it noted was a "specific and more binding variant of the law of the case," and concluded that the "doctrine of the law of the case and the rule of mandate apply to matters remanded to the Agency for further proceedings." Id. at 1214, 1216 (internal quotation omitted). In rejecting the

9 - OPINION & ORDER

defendant's argument regarding the pending case not being the "same" case for purposes of the law of the case doctrine, the court was "unpersuaded" that the prior district court order operated as a final judgment divesting the district court of jurisdiction. Id. at 1217-18. The court explained that the United States Supreme Court and the Ninth Circuit had both recognized that "an action brought following a reversal and remand for further proceedings in the same litigation is the same case for purposes of application of the law of the case doctrine." Id. The court stated that "[a]ny argument that this Court's December 12, 2001 Order [remanding the case for the second time] could be anything but part of the 'same case'" had to be rejected. Id. at 1218; see also Brown v. Astrue, 597 F. Supp. 2d 691, 696-98 (N.D. Tex. 2009) (fact that court remanded action to ALJ pursuant to sentence four did not preclude application of law of the case; relevant question was whether district court made substantive determinations about the ALJ's findings).

Some district courts have concluded that a subsequent appeal to the district court of an ALJ decision issued after a sentence four remand by the district court, is not the "same litigation" for purposes of the law of the case doctrine. Frost v. Astrue, 627 F. Supp. 2d 1216, 1223 (D. Kan. 2008) (because a sentence four remand in a social security case is a final judgment which terminates the case and makes judicial review of a decision after remand a separate piece of litigation, court would not apply law of the case doctrine); Hollins v. Apfel, 160 F. Supp. 2d 834, 840 (S.D. Ohio 2001) (same), aff'd, No. 01-3535, 49 Fed. Appx. 533, 2002 WL 31398968 (6th Cir. Oct. 17, 2002). In both of those cases,

10 - OPINION & ORDER

however, the court alternatively considered the doctrine of issue preclusion regarding issues previously decided by the district court before remand to the ALJ.    Frost, 627 F. Supp. at 1223; Hollins, 160 F. Supp. 2d at 840.

Because the Ninth Circuit offers no guidance, and the relevant district court decisions have reached differing results, compare Ishchay and Brown (suggesting sentence four judgment of remand does not terminate litigation and subsequent proceedings are "same case" for purposes of "law of the case" doctrine), with Frost and Hollins (expressly holding that a sentence four judgment of remand terminates the case at that point rendering subsequent proceedings new litigation), I consider whether relitigation of any issues decided by Judge Marsh in his February 14, 2008 Opinion, is precluded under the law of the case doctrine, or alternatively, the doctrine of issue preclusion.    For the reasons explained below, I agree with defendant that some of the issues plaintiff raises in the instant matter have been previously decided and are not subject to further review.

For a prior ruling to become law of the case as to a particular issue, that issue "must have been decided explicitly or by necessary implication in the previous disposition."    Herrington v. County of Sonoma, 12 F.3d 901, 904 (9th Cir. 1993) (internal quotation marks and alteration omitted).    Here, it is beyond doubt that Judge Marsh explicitly discussed and rejected plaintiff's arguments that the ALJ erred in his credibility finding, erred in his assessment of the VA disability findings, and erred in his rejection of Dr. Dobscha's opinion and assessment of plaintiff's work-related functions.    Thus, in the instant case, I do not

11 - OPINION & ORDER

consider plaintiff's arguments that the ALJ improperly rejected Dr. Dobscha's opinion and the VA disability ratings and improperly rejected plaintiff's testimony because the law of the case doctrine precludes reexamination of those issues.

Moreover, Judge Marsh also expressly held that the ALJ's assessment of the record at step three was "reasonable and based on substantial evidence." Ball, No. CV-07-231-MA, Op. at pp. 7-8 (affirming ALJ's evaluation of issues related to step three determination as based on substantial evidence and legally sufficient reasoning). Thus, I do not consider plaintiff's argument that the step three finding is not supported by substantial evidence or based on the correct legal standards.

There are exceptions to the law of the case doctrine. "The law of the case doctrine is subject to three exceptions that may arise when (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." Minidoka Irrigation Dist. v. Dep't of Interior, 406 F.3d 567, 573 (9th Cir. 2005) (internal quotation omitted); see also Mendenhall v. National Transp. Safety Bd., 213 F.3d 464, 469 (9th Cir. 2000) (court may depart from the law of the case when (1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would otherwise result).

Plaintiff argues that here, the prior decision is clearly erroneous and a manifest injustice will result if it is enforced.

12 - OPINION & ORDER

I reject this argument. I find no validity to plaintiff's argument that Judge Marsh's decision was clearly erroneous. As to the issues he reviewed, Judge Marsh's Opinion shows he considered them thoroughly. An exception to the law of the case doctrine is not warranted here. No manifest injustice will result by enforcing the determinations made by Judge Marsh.

If the law of the case doctrine is not appropriately applied here because, according to some courts, proceedings following a sentence four remand constitute a separate cause of action, then the alternative analysis is one of issue preclusion. The doctrine of issue preclusion provides that "once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue on a different cause of action between the same parties." Park Place Assocs., 563 F.3d at 925 n.11 (internal quotation omitted). There is no question that the parties in the instant case are the same as in Judge Marsh's case and that, as discussed above, Judge Marsh decided several issues which were necessary to the remand judgment. Thus, the errors plaintiff raises in the instant case regarding the rejection of Dr. Dobscha's opinion and the VA disability ratings, regarding plaintiff's credibility, and regarding an unsupportable step three finding, are not subject to relitigation and I do not consider them.

Finally, although I conclude that these issues are precluded under the law of the case or issue preclusion doctrine, I reject defendant's contention that the law of the case, or issue preclusion, similarly precludes relitigation of certain issues regarding the lay witness testimony. Plaintiff contends that the

13 - OPINION & ORDER

ALJ failed to comply with Judge Marsh's Order by failing to address "all" lay witness testimony. In his opening memorandum filed in Judge Marsh's case, plaintiff argued that ALJ Tielens had erred by failing to discuss lay testimony of plaintiff's sister and his supervisor, and had improperly rejected testimony of plaintiff's wife. In its motion to remand, defendant conceded that ALJ Tielens had erred by failing to address the lay testimony of plaintiff's sister. Defendant expressly stated that it did not concede any other errors by ALJ Tielens regarding lay witness testimony. In his Opinion and Order, Judge Marsh noted defendant's concessions that mistakes were made at step four and in the alternative step five finding, but Judge Marsh engaged in no substantive discussion of any of the lay witness testimony. Then, in concluding, Judge Marsh stated that further proceedings were necessary to address "all lay witness testimony." Id. at p. 7.

Based on this language, plaintiff contends that upon remand, the ALJ was required to re-address all lay witness testimony to fully comply with Judge Marsh's Order. I agree with plaintiff. Without any discussion of the merits of the ALJ's treatment of the lay witness testimony, neither the law of the case doctrine nor the doctrine of issue preclusion precludes relitigation of the lay witness issues. Although, when examined in the context of the concession made by defendant regarding lay testimony, it is perhaps possible to interpret Judge Marsh's reference to "all" as an acknowledgment that ALJ Tielens failed to discuss "all" of the lay witness testimony because he omitted any reference to plaintiff's sister's statements, the Order is unclear. It plainly says "all" lay witness testimony was to be addressed and it is undisputed that

upon remand, ALJ Say did not discuss all of the lay witness testimony.  I address the alleged errors in regard to lay witness testimony below.

In addition to the lay witness testimony, plaintiff raises other arguments that require discussion.  They are:  (1) whether the ALJ erred in regard to Dr. Cowan's and Dr. Barrett's opinions; (2) whether the ALJ erred in regard to his findings regarding transferrable skills; and (3) whether the vocational expert testimony conflicts with the Dictionary of Occupational Titles.[1]

I.  Lay Testimony

Based on Judge Marsh's Order, ALJ Say considered the third party lay witness statements of plaintiff's sister Brenda Bailey. Bailey's first statement, dated November 7, 2002, reveals that Bailey lives in Georgia and that she had seen plaintiff once in the last year or two.  Tr. 313.  She also stated that she saw him once every two years when he visited the family.  Id.  Bailey rated plaintiff as markedly impaired in his functionality and activities of daily living.  Id.  She reported that plaintiff had told her of many limitations, including an inability to perform weeding, mowing, raking, cleaning bathtub/shower, cleaning floors, and vacuuming.  Tr. 314.  Plaintiff also reported to Bailey that he needed help while fishing for halibut because of back and shoulder pain.  Id.

Bailey noted that plaintiff had told her that he had fought

---

[1]  In his list of alleged errors noted in his Opening Memorandum, plaintiff contends that the ALJ failed to consider plaintiff's combined impairments.  Pltf's Op. Mem. at p. 10. However, plaintiff fails to mention this contention again in his argument, and I do not consider it.

15 - OPINION & ORDER

with people, including a shouting match with his supervisor in 1999. Id. She indicated that he was markedly impaired in social functioning and that every other month when she calls, he seems severely depressed. Tr. 315-16. In a subsequent submission, dated June 3, 2006, Bailey reported that plaintiff was at a certain army checkpoint in Korea on the date of the "Axe-Murder Incident." Tr. 1194.[2] She noted that since that time, something had "happened" to plaintiff. Id. She remarked that plaintiff had complained about burning and shooting pain in his back and legs since a 1997 car accident. Id. Bailey noted that after plaintiff flew to Alabama for a family funeral in 2004, plaintiff mostly laid down and complained of pain. Tr. 1195. When Bailey speaks to plaintiff, he is lying on the couch due to either depression, or severe pain from his stomach, shoulder or back. Id.

ALJ Say considered both of Bailey's statements and explained that

> [t]here is no reason to change the [RFC] because of third party lay witness statements, inclusive of Ms. Bailey's statements. While the undersigned finds the lay witness testimony and statements are essentially credible, much of the information, particularly from Brenda Bailey, who lives in Georgia and only sees the claimant every two years or so, is not entirely credible in terms of her observations because she has not observed him for any prolonged period of time.

Tr. 1382. The ALJ also noted that at the most recent hearing, plaintiff testified that Bailey was a credible witness. Id. The ALJ explained that the statement was of questionable validity and

---

[2] As Judge Marsh explained in his Opinion & Order, the "Axe-Murder Incident" occurred in August 1976 along the North-South Korean border when a workforce stationed there was ambushed and one member of the workforce was killed with a hatchet. Ball, No. CV-01-231-MA, Op. at p. 5.

value because plaintiff's credibility, not his sister's, was lacking. Id.

Plaintiff argues that the ALJ erred by, on the one hand, finding Bailey's statements "essentially credible," and on the other, rejecting her observations because Bailey had not observed plaintiff for any "prolonged period of time." Plaintiff also argues that the ALJ erred by not specifically mentioning Bailey's statements about plaintiff's presence at the Axe-Murder Incident or her assessment that plaintiff has certain marked limitations.

The ALJ may reject lay witness testimony for reasons that are germane to the witness. Carmichael v. Commissioner, 533 F.3d 1155, 1163-64 (9th Cir. 2008). Here, the ALJ rejected Bailey's statements because they were not based on her personal observation over a period of time. This reason is germane to Bailey and is sufficient. See, e.g., Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1995) (indicating that sufficient contact by the lay witness with the claimant is required to render lay witness competent to testify regarding claimant's limitations). Additionally, there was no need for ALJ Say to separately mention Bailey's "marked" checkbox limitation assessments since these were part of, and based on, Bailey's narrative descriptions which ALJ Say legitimately rejected. Finally, Judge Marsh had already affirmed ALJ Tielens's negative credibility determination regarding plaintiff and specifically discussed, and rejected, plaintiff's assertions regarding his participation in the Korea "Axe-Murder Incident." Ball, No. CV-07-231-MA, Op. at pp. 5-7. There was no error by the ALJ in failing to specifically address Bailey's statements in this regard.

17 - OPINION & ORDER

1    The ALJ also discussed statements by plaintiff's wife,
2    specifically citing to three written statements she submitted
3    before Judge Marsh's Remand Order, and to one she submitted post-
4    remand. Plaintiff's objections are limited to the pre-remand
5    statements. See Pltf's Op. Mem. at pp. 13-15 (raising objections
6    only to the ALJ's discussion of pre-remand statements submitted by
7    plaintiff's wife).

8    The ALJ rejected the several statements submitted by
9    plaintiff's wife because he found that plaintiff admitted to
10   greater activities than reported by his wife, her statements were
11   eroded by the plaintiff's own lack of credibility and propensity to
12   exaggerate his symptoms and limitations, and her testimony and
13   statements were not supported by the medical records as a whole.
14   Tr. 1381. Additionally, the ALJ noted that while the written
15   statements from plaintiff's wife were "generally credible" as a
16   report of her observations of behavior demonstrated by plaintiff,
17   she was not knowledgeable in the medical or vocational fields and
18   was unable to render appropriate opinions on how claimant's
19   physical impairments affected his overall abilities to perform
20   basic work activities at various exertion levels. Id.

21   Plaintiff argues that the ALJ erred because plaintiff's own
22   lack of credibility is independent of his wife's third party
23   observations that do no rely on his credibility or reporting.
24   Plaintiff also argues that the ALJ's statement about plaintiff's
25   wife's lack of knowledge in the medical or vocational fields has no
26   bearing on her credibility as a lay witness. Finally, plaintiff
27   contends that the ALJ erred by finding that plaintiff's wife's
28   statements were not supported by the medical records as a whole

18 - OPINION & ORDER

1  because the medical records, according to plaintiff, overwhelmingly
2  establish that plaintiff is disabled.

3      The ALJ's rejection of the plaintiff's wife's statements is
4  supported by the record and is based on reasons germane to her
5  testimony. First, given plaintiff's lack of credibility, a finding
6  not subject to reexamination, it was not error for the ALJ to
7  suggest that plaintiff's wife's reported observations of
8  plaintiff's activities, while generally credible, are still
9  inherently unreliable. To the extent her observations were based
10 on plaintiff's statements to her or observing his activity level,
11 given the determination of plaintiff's own negative credibility, it
12 is possible his complaints and behaviors were not credible. Even
13 if the ALJ erred in that regard, his statement regarding
14 plaintiff's wife's lack of knowledge in the medical or vocational
15 fields is a valid basis for rejecting her functional limitation
16 assessments, such as "marked," e.g., Tr. 317-20, because such
17 assessments are distinct from reports of observations of daily
18 activities and they require some familiarity with medical/
19 vocational guidelines and vernacular which plaintiff's wife does
20 not have. Finally, while plaintiff contends that Dr. Dobscha's
21 opinion, and others, actually supports plaintiff's wife's
22 statements, ALJ Tielens's rejection of Dr. Dobscha's opinion was
23 expressly affirmed by Judge Marsh, is not subject to relitigation,
24 and thus cannot be a basis for arguing that the lay witness
25 statement finds support in the record. The ALJ did not err in
26 rejecting plaintiff's wife's statements.

27     As to the statement by fellow servicemember Mike Bilbo,
28 although ALJ Say did not discuss it, there is no error. Bilbo's

19 - OPINION & ORDER

1  statements, which appear to have been part of the record before
2  Judge Marsh, address plaintiff's presence in Korea during the Axe-
3  Murder Incident.  Tr. 353, 367-68.  Relitigation of this issue is
4  precluded by Judge Marsh's express discussion of the issue and his
5  finding that ALJ Tielens's rejection of plaintiff's credibility was
6  not error.  ALJ Say did not err in failing to discuss this lay
7  witness testimony.

8      Finally, there is no mention by ALJ Say of a June 2000
9  statement by plaintiff's former supervisor Robert Hathaway which
10  noted, shortly before plaintiff's alleged onset date, plaintiff's
11  difficulties in carrying heavy luggage or boxes, and standing or
12  sitting in place for long periods of time.  Tr. 266, 420.  Because
13  of the requirement by Judge Marsh that the ALJ on remand address
14  all lay witness testimony, and because disregard of lay witness
15  testimony is error, Stout v. Commissioner, 454 F.3d 1050, 1056 (9th
16  Cir. 2006), the ALJ erred in this regard.

17  II.  Opinions of Dr. Cowan and Dr. Barrett

18      Plaintiff contends that the ALJ improperly rejected the
19  opinions of plaintiff's treating chiropractor, Dr. Lee Cowan, D.C.,
20  and a treating psychiatrist, Dr. Thomas Barrett, M.D.  I agree with
21  plaintiff that the ALJ erred; however, the error is not an improper
22  rejection, but a failure to address these practitioners' opinions
23  at all.

24      Plaintiff correctly notes that Judge Marsh's Opinion contained
25  no express discussion of ALJ Tielens's rejection of Dr. Cowan's
26  opinions.  However, as noted above, Judge Marsh did affirm ALJ
27  Tielens's step three finding.  Thus, to the extent Dr. Cowan's
28  opinions have any relevance to a step three determination, Judge

20 - OPINION & ORDER

1  Marsh's Order precludes reexamination of Dr. Cowan's opinions under
2  the doctrines of law of the case or issue preclusion.  Nonetheless,
3  Dr. Cowan's opinions have relevance to the determinations at step
4  four and step five, issues which were expressly remanded by Judge
5  Marsh to the agency for further consideration.  ALJ Say's failure
6  to even discuss Dr. Cowan's opinions in regard to his step four and
7  five determinations, and in particular, plaintiff's RFC, was error.

8      Similarly, his failure to discuss Dr. Barrett's May 2008
9  report was also error.  Although defendant argues that ALJ Say
10 rejected Dr. Barrett's report because it related to a period of
11 time after December 31, 2005, the date on which plaintiff's
12 eligibility for DIB expired, defendant has misread ALJ Say's
13 decision which makes no mention of Dr. Barrett's report and which
14 cites the time period after December 31, 2005, as the basis for
15 rejecting a sleep study report.

16     However, as with Dr. Cowan, given the preclusive effect of
17 Judge Marsh's Opinion on the step three finding, the ALJ did not
18 err in failing to discuss Dr. Barrett's report as part of a step
19 three analysis.  Still, as with Dr. Cowan, Dr. Barrett's report is
20 relevant to any determinations made at steps four and five, and to
21 the ALJ's RFC determination.  The ALJ's failure to discuss Dr.
22 Barrett's opinions in regard to the step four and five
23 determinations was error.

24     Plaintiff argues that because Dr. Cowan's and Dr. Barrett's
25 opinions conclusively establish disability, there is no reason to
26 return this case to the agency for further proceedings, especially
27 given the long period of time in which the case has been pending
28 and the numerous errors made by various ALJs during the litigation.

21 - OPINION & ORDER

1   Although I recognize that continued administrative hearings pose a
2   burden, I do not believe remand for benefits is appropriate here.

3       First, as discussed in more detail below, errors at step five
4   require a remand for further proceedings.  Second, while the
5   crediting as true rule may be applicable when an ALJ has improperly
6   rejected testimony, I find its application inappropriate in this
7   case when the ALJ has simply failed to discuss the medical opinion
8   testimony.  Because the ALJ, not this Court, is the factfinder, it
9   should be the ALJ's province to address the evidence in the first
10  instance.  Additionally, as plaintiff notes, as to Dr. Cowan, after
11  ALJ Tielens issued his decision in May 2006, defendant issued
12  Social Security Ruling (SSR) 06-3p which addresses the method for
13  evaluating opinions from "other sources," who are not "acceptable
14  medical sources," including chiropractors like Dr. Cowan.  The ALJ,
15  as the factfinder, should perform the initial assessment of Dr.
16  Cowan's opinions under this SSR.

17  III.  Transferability of Skills

18      Vocational Expert (VE) Jenipher Gaffney testified at the
19  October 28, 2008 hearing before ALJ Say.  Tr. 1536-54.  As part of
20  her testimony, the VE testified that plaintiff's work as an equal
21  opportunity officer was classified as a sedentary, skilled
22  position, but that his prior position as a civil rights specialist
23  had no equivalent match in the Dictionary of Occupational Titles
24  (DOT).  Tr. 1439-40.  The VE explained that the civil rights
25  specialist position most closely matched two recognized DOT
26  positions:  contract clerk and training specialist.  Id.  The DOT
27  classifies the training specialist job as a light, semi-skilled
28  occupation, and classified the contract clerk job as a sedentary,

22 - OPINION & ORDER

skilled occupation.  Id.

The ALJ presented a hypothetical to the VE which included a limitation of simple, routine, repetitive work with occasional complex tasks, and not requiring frequent or repetitive interaction with co-workers or the general public.  Tr. 1543-44.  The VE responded that such an individual would be unable to perform any of plaintiff's past work.  Tr. 1544.

Next, the ALJ asked if such an individual would have transferable skills within the limitations the ALJ had described. Id.  The VE said yes.  Tr. 1544-45.  She explained that

> occupations that would be feasible in light of
> transferrable skills would be an occupation known as a
> general office clerk.  As the title would imply, that
> individual performs a variety of office and clerical
> tasks of a very general nature.  That is classified in
> the DOT as a light semi-skilled job.  I think it fits the
> restrictions for simple, routine and repetitive, even
> though the SVP is semi-skilled.  It is a 3 on the SVP.

Tr. 1545.  The VE also identified a similar administrative clerk position which was also a light, semi-skilled job.  Id.  As part of her testimony, the VE testified that plaintiff's transferable skills were "processing of information, the clerical processes procedures, the computer skills, filling [sic] skills, copying, using routine office equipment, telephones, computers, faxes, printers, etcetera."  Tr. 1545.

In his decision, ALJ Say stated that the VE testified that plaintiff's past relevant work as a civil rights and equal employment opportunities claim specialist was skilled with a specific vocational preparation code of 6-7 and with the transferable skills of processing information and performing clerical duties such as filing and operating office equipment.  Tr.

1383. Then, based on plaintiff's age, education, work experience,
and RFC, ALJ Say found that plaintiff had work skills acquired from
his past relevant work that were transferable to other occupations
with jobs existing in significant numbers in the national economy.
Id.   He identified the jobs as general office clerk and
administrative clerk.   Id.   Thus, he found that plaintiff was not
disabled.   Id.

Under the applicable regulation, defendant considers a
claimant

> to have skills that can be used in other jobs, when the
> skilled or semi-skilled work activities you did in past
> work can be used to meet the requirements of skilled or
> semi-skilled work activities of other jobs or kinds of
> work.   This depends largely on the similarity of
> occupationally significant work activities among
> different jobs.

20 C.F.R. § 404.1568(d)(1).   The regulation further provides that

> [t]ransferability is most probable and meaningful among
> jobs in which-
>
>> (i) The same or a lesser degree of skill is
>> required;
>> (ii) The same or similar tools and machines are
>> used; and
>> (iii) The same or similar raw materials, products,
>> processes, or services are involved.

20 C.F.R. § 404.1568(d)(2).   Moreover, the regulation recognizes
that "[t]here are degrees of transferability of skills ranging from
very close similarities to remote and incidental similarities among
jobs.   A complete similarity of all three factors is not necessary
for transferability."   20 C.F.R. § 404.1568(d)(3).

Social Security Ruling 82-41 further provides that
transferability is most probable and meaningful among jobs in which
the same or lesser degree of skill is required because "people are
not expected to do more complex jobs than they have actually

24 - OPINION & ORDER

performed (i.e., from a skilled to a semiskilled or another skilled job, or from one semiskilled to another semiskilled job)[.]" SSR 82-41, available at 1982 WL 31389, at *5. Additionally, a skill is defined as

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above the unskilled level[;] [i]t is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner.

Id. at *2.

"Usually the higher the skill level, the more the potential for transferring skills increases." Id. at *4. SSR 82-41 acknowledges that a "particular job may or may not be identifiable in authoritative reference materials." Id. A vocational expert may be necessary to ascertain whether there are transferable skills from a claimant's past relevant work. Id. Additionally, occupational titles and "skeleton descriptions," while relevant, may be insufficient sources of information about a claimant's past relevant work with the claimant himself being in the best position to describe his duties. Id. As an example of transferable skills, SSR 82-41 expressly notes that

> a semiskilled general office clerk (administrative clerk), doing light work, ordinarily is equally proficient in, and spends considerable time doing, typing, filing, tabulating and posting data in record books, preparing invoices and statements, operating adding and calculating machines, etc. These clerical skills may be readily transferable to such semiskilled sedentary occupations as typist, clerk-typist and insurance auditing control clerk.

Id. at *3.

When transferability of skills is an issue, the "'ALJ is

25 - OPINION & ORDER

required to make certain findings of fact and include them in the written decision.'" <u>Bray v. Commissioner</u>, 554 F.3d 1219, 1232 (9th Cir. 2009) (quoting SSR 82-41, 1982 WL 31389, at *7). "'[T]he acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the ALJ's decision.'" <u>Id.</u> (quoting SSR 82-41, 1982 WL 31389, at *7) (ellipsis omitted).

Plaintiff argues that the VE's testimony regarding transferable skills, and the ALJ's findings regarding transferable skills, are not supported by substantial evidence. Plaintiff contends that there is no evidence that plaintiff performed such tasks in his past relevant work and that the two occupations identified by the VE require different tools, different work processes, different work settings, and different industries from those of plaintiff's past relevant work.

I find no error in the ALJ's finding that plaintiff possessed certain general office skills obtained in his past relevant work which were transferrable to the positions of general office clerk or administrative clerk. Both past relevant work positions and the two positions identified by the VE were all semi-skilled, satisfying the requirement that skills should be transferred from one skill level to an equal or lesser skill level.

The VE testified that she had studied the vocational materials in the record and she also requested clarification of the job tasks and duties in plaintiff's most recent position as a civil rights specialist. Tr. 1536-37. Based on his testimony, she concluded that the civil rights specialist was most properly matched to a training specialist and a contract clerk. Tr. 1539.

26 - OPINION & ORDER

1   The VE then explained that plaintiff's past relevant work
2   provided him with certain skills she specifically identified and
3   which she testified would be transferable to the general office
4   clerk and administrative clerk positions.  Tr. 1545-46.  The ALJ
5   did not cite every skill identified by the VE, but did rely on the
6   skills of processing information and performing clerical duties
7   such as filing and operating office equipment as relevant
8   transferable skills.  Tr. 1383.

9   The VE's testimony provided the ALJ with substantial evidence
10  of the skill level required in plaintiff's past relevant work and
11  the particular skills acquired by his past relevant work
12  activities.  Although plaintiff complains that there is no evidence
13  that he performed such tasks in his past relevant work, as SSR 82-
14  41 itself acknowledges, semi-skilled office positions inherently
15  carry with them proficiency in certain office-related skills such
16  as typing, filing, working with data, and operating machinery.  SSR
17  82-41, 1982 WL 31389, at *3.  The rule also recognizes that some
18  job skills have "universal applicability across industry lines"
19  such that "transferability of skills to industries differing from
20  past work experience can usually be accomplished with very little,
21  if any, vocational adjustments[.]"  SSR 82-41, 1982 WL 31389, at
22  *6.

23  The ALJ did not err in his determinations regarding
24  plaintiff's transferability of skills.

25  IV.  Vocational Expert Testimony & DOT

26  In questioning the VE, the ALJ posed the following
27  hypothetical:  an individual, fifty-four years old, with a high
28  school education and a bachelor's degree in sociology, with

27 - OPINION & ORDER

plaintiff's work history who is limited to medium exertion activities such that he can lift and carry up to fifty pounds occasionally, twenty-five pounds frequently, sit up to six hours out of an eight-hour work day, stand and walk up to six hours out of an eight-hour work day, and occasionally use his left arm and left upper extremity to reach, handle, finger, and feel. Tr. 1543. The ALJ also included limitations because of mental impairments, including a limitation to "simple routine repetitive work including occasional complex tasks, not requiring frequent or repetitive interaction with co-workers or the general public." Tr. 1543-44. In response to a question by the VE to clarify the limitation regarding interaction with co-workers or the public, the ALJ indicated that superficial interaction would be all right for work-related purposes, such as giving and receiving information or instructions. Tr. 1544.

In response, the VE identified the previously mentioned positions of general office clerk and administrative clerk. Tr. 1545. For the general office clerk, the VE testified that it was a light, semi-skilled job that fit the restrictions for simple, routine, and repetitive work, even though it was an SVP 3 position. Id. The DOT number is 209.562-010. Id. The VE described the administrative clerk position as being very similar in terms of job tasks and duties, but people performing the job would more likely be assigned to assist one individual or a small group of individuals rather than performing generally in an office. Id. The job was also classified as light and semi-skilled, with DOT number 219.362-010. Id. The VE stated that the SVP for the administrative clerk position is 4. Tr. 1546. She testified that

28 - OPINION & ORDER

1   both jobs were consistent with the DOT.   Id.

2      Plaintiff contends that the VE's testimony departs from the

3   DOT and that the ALJ failed to obtain the VE's explanation for that

4   departure.  As a result, plaintiff contends that the VE's testimony

5   does not provide substantial evidence at step five.

6      Plaintiff cites three errors in the VE's testimony.  First, as

7   plaintiff notes, the DOT classifies both the general office clerk

8   and administrative clerk as requiring the ability to reach, handle,

9   and finger "frequently."  Dictionary of Occupational Titles (4th

10  ed. 1991) (1991 WL 671792, 1991 WL 671953).  Plaintiff contends

11  that positions with this requirement conflict with the limitation

12  by the ALJ to only an occasional use of the left upper extremity

13  for reaching, handling, fingering, and feeling.  Defendant responds

14  that plaintiff overlooks the fact that the ALJ found no limitations

15  in plaintiff's dominant right extremity and furthermore, that there

16  is no evidence that the identified jobs require bilateral reaching,

17  handling, or fingering.   Thus, defendant contends, there is no

18  conflict between the VE testimony and the DOT.

19     I agree with defendant because, as defendant notes, there are

20  no limitations on plaintiff's use of his right arm and hand.  And,

21  defendant is correct that there is no evidence that the identified

22  jobs require bilateral reaching, handling, or fingering.

23     Next, plaintiff notes that the DOT description of the

24  administrative clerk position suggests that "dealing with people"

25  is a requirement of the position, making the VE's testimony

26  conflict with the DOT regarding this position.  The administrative

27  clerk job description in the DOT includes "[g]ives information to

28  and interviews customers, claimants, employees, and sales

29 - OPINION & ORDER

1  personnel" as well as "[m]ay greet and assist visitors." 1991 WL
2  671953. It further indicates that the position requires "[d]ealing
3  with people[.]" Id. The description of the administrative clerk
4  position in the DOT appears to conflict with the ALJ's limitation
5  of plaintiff to jobs not requiring frequent or repetitive
6  interaction with co-workers or the general public.

7      The ALJ may rely on VE testimony that conflicts with or
8  deviates from the DOT "but only insofar as the record contains
9  persuasive evidence to support the deviation." Johnson v. Shalala,
10 60 F.3d 1428, 1435 (9th Cir. 1995). Thus, in Johnson, the ALJ
11 properly relied on VE testimony which conflicted with the DOT
12 because the VE gave "persuasive testimony of available job
13 categories in the local rather than the national market, and
14 testimony matching the specific requirements of a designated
15 occupation with the specific abilities and limitations of the
16 claimant." Id.

17     SSR 00-4p, available at 2000 WL 1898704, makes clear that
18 "[n]either the DOT nor the VE [] evidence automatically 'trumps'
19 when there is a conflict." SSR 00-4p, 2000 WL 1898704, at *2. In
20 the face of a conflict, the "adjudicator must elicit a reasonable
21 explanation for the conflict before relying on the VE [] evidence
22 to support a determination or decision about whether the claimant
23 is disabled." Id. "The adjudicator must resolve the conflict by
24 determining if the explanation given by the VE [] is reasonable and
25 provides a basis for relying on the VE or VS testimony rather than
26 on the DOT information." Id.

27     Here, while ALJ Say asked the VE if her testimony was
28 consistent with the DOT, the VE answered in the affirmative. As a

1   result, there is no explanation in the record for any conflict

2   between her testimony and the DOT.    Therefore, there is an

3   unresolved issue at step five.

4       Finally, plaintiff's primary complaint about the VE's

5   testimony conflicting with the DOT relates to plaintiff's

6   limitation to no more than simple, routine, repetitive work

7   including occasional complex tasks.    Plaintiff notes that the

8   general office clerk and administrative clerk positions identified

9   by the VE carry reasoning levels of three and four, respectively.

10  1991 WL 671792, 1991 WL 671953.

11      Reasoning level three is defined as the ability to "[a]pply

12  commonsense understanding to carry out instructions furnished in

13  written, oral, or diagrammatic form[, and to] [d]eal with problems

14  involving several concrete variables in or from standardized

15  situations." DOT, App. C, 1991 WL 688702.    Reasoning level four is

16  defined as the ability to "[a]pply principles of rational systems

17  to solve practical problems and deal with a variety of concrete

18  variables in situations where only limited standardization exists[,

19  and to] [i]ntepret a variety of instructions furnished in written,

20  oral, diagrammatic, or schedule form."    Id.

21      Plaintiff contends that these reasoning requirements are

22  incompatible with the limitations given by the ALJ to simple,

23  routine, repetitive work with occasional complex tasks.    The only

24  appropriate positions, according to plaintiff, are those which

25  carry a reasoning level of one, defined as the ability to "[a]pply

26  commonsense understanding to carry out simple one- or two-step

27  instructions[, and] [d]eal with standardized situations with

28  occasional or no variables in or from these situations encountered

31 - OPINION & ORDER

1  on the job."  Id.

2       In response, defendant contends that the DOT's reasoning scale

3  reflects   an   individual's   formal   or   informal   educational

4  achievements  in  reasoning,  math,  and  language,  and  is  not  a

5  reflection of the duties or tasks an individual would be required

6  to perform on a particular job.  Defendant argues that plaintiff's

7  educational achievement includes a college degree in sociology and

8  transferable skills from his past relevant work.

9       While defendant makes a valid point about plaintiff's college

10  degree and his transferable skills, the DOT's own explanation of

11  the reasoning scale suggests that the reasoning level assigned to

12  a  job  classification  does  in  fact  reflect  the  reasoning  skills

13  required for the worker to satisfactorily perform that particular

14  job.

15       The  DOT  explains  that  the  General  Educational  Development

16  (GED)  section  of  its  job  classifications  has  three  divisions:

17  reasoning  development,  mathematical  development,  and  language

18  development.  Id.  The GED section "embraces those aspects of

19  education (formal and informal) which are required of the worker

20  for satisfactory job performance."  Id.

21       In Meissl v. Barnhart, 403 F. Supp. 2d 981 (C.D. Cal. 2005),

22  the court explained that a "job's reasoning level . . . gauges the

23  minimal  ability  a  worker  needs  to  complete  the  job's  tasks

24  themselves."  Id. at 983 (distinguishing reasoning levels from the

25  SVP level).  "[T]he issue of a job's simplicity . . . appears to be

26  . . . squarely addressed by the GED reasoning level ratings."  Id.

27  (internal quotation and brackets omitted).  Thus, in Meissl, "[t]he

28  one vocational consideration directly on point with the limitation

32 - OPINION & ORDER

[to simple tasks performed at a routine pace] contained in the RFC is a job's reasoning level score." Id. Accordingly, while the reasoning scale may generally embrace an individual's educational achievements, the DOT indicates that a job classification's particular reasoning level corresponds directly to the reasoning skills required for the worker to satisfactorily perform that particular job.

Several courts have found level two reasoning to be consistent with the ability to do simple, routine and/or repetitive work tasks. See, e.g., Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005) (Level 2 reasoning more consistent with limitation to simple, routine work tasks); Meissl, 403 F. Supp. 2d at 983-85 (limitation to simple, repetitive tasks closer to level 2 reasoning); Flaherty v. Halter, 182 F. Supp. 2d 824, 850-51 (D. Minn. 2001). Defendant, however, cites to no cases finding a limitation to simple, routine, repetitive work consistent with a level three or four reasoning level. Furthermore, I agree with plaintiff that while the RFC in this case allows for the occasional complex task, the DOT classifications indicate that the requisite reasoning level applies to the particular job as it is regularly performed.

The problem here is the failure of the VE to explain how plaintiff, with the limitations given by the ALJ, can perform the jobs cited by the VE given the reasoning levels assigned to those jobs by the DOT. On the present record, there is a conflict with the VE testimony and the DOT. As explained above, in such cases the ALJ may credit the VE testimony, but only when the record shows that the ALJ has obtained a "reasonable explanation" for the

conflict and then explains a basis for relying on the VE rather than on the DOT.  Although the VE may have been able to provide such an explanation, in this case the ALJ failed to obtain one. Thus, the ALJ's step five determination is, at this point, without support in the record.

In social security cases, the district court is not the factfinder and thus, I am not in a position to adjudicate the facts contained in this record.  But, I echo Judge Marsh's previous statement that "[b]y no means is a finding of disability directed on the present record." Tr. 7.  It is relatively apparent that for a decision to be final, at the administrative or district court level, it is essential that the ALJ on remand carefully review all regulations, dot every "i," cross every "t," and proofread his or her proposed disposition for internal consistency.  The Court urges the ALJ to do this to avoid this case having to be returned by the Court to the ALJ for a third time.

CONCLUSION

The Commissioner's decision is reversed and the case remanded for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

Dated this <u>27th</u> day of <u>August</u>, 2010.

/s/ Dennis J. Hubel

_____
Dennis James Hubel
United States Magistrate Judge

34 - OPINION & ORDER